UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                      Case No. 6:25-cr-00290

v.

NEDA JOUDEH,

    Defendant.

_____/

**DEFENDANT NEDA JOUDEH'S MOTION
TO COMPEL GRAND JURY TRANSCRIPTS**

Pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, the defendant, Neda Joudeh ("Ms. Joudeh"), respectfully moves this this Court for an Order compelling the government to produce the Grand Jury transcripts pertaining to the Assistant United States Attorney's instructions and statements to Grand Jury concerning the evidence supporting the 18 U.S.C. § 875(c) charge against Ms. Joudeh. In the alternative, Ms. Joudeh respectfully requests that the Court conduct an *in camera* review of those materials and order disclosure of those portions of the transcripts the Court determines are necessary to allow Defendants to pursue their claim that potentially false testimony was presented to the Grand Jury in securing the indictment of Ms. Joudeh.

1

## **STATEMENT OF FACTS**

On June 21, 2025, the New York Times published an article about a law-school seminar paper, "National Constitutionalism," written by student Preston Damsky. *See* Richard Fausett, *A White Nationalist Wrote a Law School Paper Promoting Racist Views. It Won Him an Award*, N.Y Times (June 21, 2025), available at https://www.nytimes.com/2025/06/21/us/white-supremacist-university-of-florida-paper.html. *See also Search Warrant Affidavit*, attached hereto as Exhibit 1. Damsky was a student in a class taught by United States District Judge John L. Badalamenti at the University of Florida Levin College of Law in the fall of 2024. Ex. 1 at ¶ 6. Mr. Damsky's paper argued that the phrase "We the People" in the United States Constitution referred exclusively to white Americans. Ex. 1 at ¶ 7. He also proposed disenfranchising nonwhite citizens and included language which advocated "shoot-to-kill orders" for non-white migrants at the border. *Id.* Nevertheless, Judge Badalamenti awarded Damsky the highest grade in the class and the book prize for best student. *Id.* Mr. Damksy's "scholarship" and Judge Baldamenti's subsequent actions became the subject of widespread public attention and criticism. *Id.* at ¶¶ 8-9. Not surprisingly, Judge Badalamente became the target of negative comments and received hateful telephone calls. *Id.* at ¶ 8.

On the day of the New York Times article, Qasim Rashid,[1] a prominent Muslim-American human rights lawyer and political commentator, posted about the article on another platform and then public Instagram account (quasimrashid).

> As Trump attacks students who dare speak up for basic justice for Palestine, a student at the University of Florida Law School named Preston Damsky wrote a paper arguing that the Constitution named Preston Damsky wrote a paper arguing that the Constitution only applies to white people & Jews and "non-whites should be 'abolished by any means necessary.'
>
> A Trump-nominated judge named John L. Badalamenti who teaches the class gave Damsky the highest grade and awarded him the Book prize.
>
> University of Florida Law School defended the decision as 'free speech.

*Id*. at ¶ 9.  Instagram users began commenting on the post. *Id*. at ¶ 10.

On her Instagram account (falasteen8090), Ms. Joudeh, commented by stating "I wish someone would in alive (sic) him." *Id*. at ¶ 11. The affidavit further notes that Ms. Joudeh's Instagram account profile picture states "STOP THE GENOCIDE." *Id*. That was it.

Although Ms. Joudeh's post did not identify any individual, Judge Badalamenti personally contacted the United States Marshals Service ("USMS") on June 22, 2025.  Ex. 1 at ¶ 6.  The USMS responded by assigning a Protective

---

[1] According to his biography, Mr. Qasim Rashid's work has additionally been published in TIME, the New York Times, the Washington Post, NPR, and USA Today. He publishes a daily Substack focused on human rights issues titled "Let's Address This with Qasim Rashid." *See* Interfaith America, Org, *Quashim Rashid, Executive Director* (2026), available at https://www.interfaithamerica.org/people/qasim-rashid.

3

Intelligence Investigator whose "primary duty is investigating and mitigating all threats against federal judges in the Middle District of Florida." *Id.* at ¶ 2.

Regarding Judge Badalamneti's reaction to the post, the search warrant affidavit, prepared by Deputy U.S. Marshall Ron Lindbak, stated the following:

> United States District Court Judge, John L Badalmenti, perceived the Instagram comment from falasteen8090, "I wish someone would in alive him" as serious direct threat against him. Judge Badalamenti and his family are Jewish and concerned that the comment from Falasteen8090 was also partially motivated by antisemitism.

*Id.*

The undersigned has not located public records identifying Judge Badalamenti and his family as Jewish. Certain public records, as well as witness interviews, indicate that Judge Badalamenti been a practicing Catholic. It is possible, then, that the fact that Judge Baladamenti was Jewish is incorrect. Such incorrect information would not only have been presented in the search warrant and presented to the grand jury.

Regardless, on October 29, 2025, the Government charged Ms. Joudeh with the Transmission of an Interstate Threat to Injure in violation of 18 U.S.C. § 875(c). Doc. 1. The Indictment alleges that Ms. Joudeh:

> did knowingly transmit in interstate and foreign commerce a communication containing a threat to injure or kill another person, that is an online comment that included the statement. "I wish someone would in alive him," with the intent to communicate a true threat of violence and with the recklessness as to whether the communication would be viewed as a true threat of violence.

*Id.* at 1.

4

**CERTIFICATION**

Pursuant to Middle District of Florida Local Rule 3.01(g), the undersigned has consulted with Assistant United States Attorney Patrick Flanigan concerning the instant motion. The Government has agreed to provide the undersigned with the grand jury testimony of the testifying agent. The Government, however, opposes the disclosure of any comments or statements by the Assistant United States Attorney to the grand jury.

**MEMORANDUM OF LAW**

In order to prosecute a federal defendant charged with a felony, the Fifth Amendment to the United States Constitution requires an indictment by a grand jury.  U.S. Const. amend. V; *see also* Fed. R. Crim. P. 7.  The Fifth Amendment grand jury right is intended to serve "a vital function . . . as a check on prosecutorial power*.*" *United States v. Cotton*, 535 U.S. 625, 634 (2002). The grand jury's historical purpose includes "both the determination whether there is probable cause to believe a crime has been committed and the protections of citizens against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974). Thus, the grand jury's function is "meant to be an independent check on the ability of the government to bring criminal charges against individuals." *In re* U.S., 441 F.3d 44, 57 (1st Cir. 2006); *see also United States v. Suarez,* 263 F.3d 468, 481 (6th Cir. 2001) (noting that the grand jury is a "defendant's main protection against the bringing of unfounded charges"). Indeed, it "functions as a shield, standing between the accuser and the accused, protecting the individual citizen

5

against oppressive and unfounded government prosecution." *Calandra*, 414 U.S. at 342-43; *see also Wood v. Georgia*, 370 U.S. 375, 390 (1962)("Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution . . . [and] stand[s] between the accuser and the accused."); *Hale v. Henkel*, 201 U.S. 43, 59 (1906) (relating the function of the grand jury  "was not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony or was dictated by malice or ill will.").

Rule 6(e) of the Federal Rules of Criminal Procedure authorizes district courts to disclose grand jury materials "in connection with a judicial proceeding" or "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii). While there is a "long-established policy that maintains the secrecy of the grand jury proceedings," *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958), courts may order disclosure of grand jury transcripts under Rule 6(e)(3)(E)(ii) when defendants establish a "particularized need" that outweighs the interest in maintaining grand jury secrecy. *United States v. Elliott*, 849 F.2d 554, 557 (11th Cir. 1988) (citing Procter & Gamble, 356 U.S. at 683).

The "particularized need" standard is met upon a showing that (1) the material sought "is needed to avoid a possible injustice in another judicial proceeding," (2) "the need for disclosure is greater than the need for continued secrecy," and (3) the "request is structured to cover only material so needed."

*Elliott*, 849 F.2d at 557 (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).

## I.        Disclosure is Necessary to Avoid Injustice

In Ms. Joudeh's case, the Government's indictment is tenuous at best. The indictment charges Ms. Joudeh with a § 875(c) violation based on an Instagram comment in a public forum that is expressed as an unintelligible wish.  As an unintelligible wish, the statement was not "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *See Brandenburg v. Ohio*, 444 U.S. 447 (1969). (citation omitted).  Nor was this unintelligible wish "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 349 (2003)(citation omitted).

Against the backdrop of a dubious indictment, the weight of evidence presented to the Grand Jury is a significant issue.  Based on the Agent Lindbak's affidavit, it is likely that the Government informed the Grand Jury that Judge Badalamenti reacted in fear to Ms. Joudeh's Instagram comment due to his and family's Jewish identity and that he considered the statement to be antisemitic. If presented, this information may have been inaccurate.

Ms. Joudeh's seeks disclosure of the grand jury transcripts to determine if the grand jury's probable cause determination was based in part on the same possibly inaccurate representations contained in Agent Lindbak's affidavit. If so, such evidence would cast "'grave doubt' that the decision to indict was free from

the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)). If the information concerning Judge Badalamenti's Jewish identity was incorrect, the Government would have perpetuated the problem by repeating the misleading information to the grand jury in its argument and instruction to secure the indictment.

Thus, Ms. Joudeh's request is not a fishing expedition. *United States v. Garcia*, 311 F. App'x 314, 317 (11th Cir. 2009). The risk that inaccurate and/or misleading information or argument was presented to the grand jury is substantiated by Agent Lindbak's affidavit. *See* Ex. 1. If so, the indictment could be subject to dismissal. *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 256 (1988)("[D]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations").

### 2. The Need for Disclosure Outweighs the Interest in Grand Jury Secrecy.

The interest in the secrecy of grand jury proceedings is not absolute. See *United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004). The presumption of grand jury secrecy can be overcome in instances, such as the case here, where the need for disclosure is greater than the public interest in preserving grand jury secrecy. Based on public records and investigation, it seems that incorrect material

information was presented to the grand jury in this case. These "circumstances ha[ve] created certain difficulties peculiar to this case, which could be alleviated by access to specific grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process." *Id.* at 1348–39 (internal citation and quotation omitted).

### 3. The Request Covers Only Material Directly Pertinent to the Need for Disclosure.

A "district court has substantial discretion in determining whether grand jury materials should be released." *See United States v. Cooper*, 680 F. App'x 844, 847 (11th Cir. 2017)(internal citation and quotations omitted). The requirement that the request be tailored to only those materials needed is necessarily a fact specific inquiry. *See*, *e.g.*, Aisenberg, 358 F.3d at 1349.

In the instant case, Ms. Joudeh has narrowed her requests to the Government and now this Court for the production those transcripts that only relate to the presentation of potentially incorrect information to the grand jury. Because the Government has agreed to provide the transcript of the testifying agent, Ms. Joudeh has further limited her requests to statements made by the prosecutor to the grand jury.

If the Government presented incorrect information or information concerning Judge Badalamenti's fear due to his Jewish identity that would necessarily raise a a 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Nova Scotia,* 487 U.S. at 256. Because

any possible misstatements would arise from potential statements by government counsel that could only be revealed through the grand jury transcripts themselves, Accordingly, the scope of the request is grounded in the particularized need articulated above.

Wherefore, the Defendant Neda Joudeh respectfully moves this Court for an Order compelling the government to produce the Grand Jury transcripts pertaining to the Assistant United States Attorney's instructions and statements to Grand Jury concerning the evidence supporting its 18 U.S.C. § 875(c) charge against her.

Respectfully submitted,

/s/          Sufia M. Khalid
Sufia M. Khalid
Deputy Director, Nat'l Security Criminal
Defense Center
Muslim Legal Fund of America
100 N. Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507
Sufia.khalid@mlfa.org
Counsel for Defendant Neda Joudeh

And

/s/ Fritz Scheller
Fritz Scheller, Esquire
Florida Bar No.: 0183113
Fritz Scheller, P.L.
231 E. Colonial Drive
Orlando, Florida 32801
PH: (407) 792-1285
FAX: (407) 649-1657
fscheller@flusalaw.com
*Attorney for Defendant Neda Joudeh*

10

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 6, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel in this case.

.

/s/ *Fritz Scheller*
Fritz Scheller
Florida Bar Number 183113
Fritz Scheller, P.L.
231 E. Colonial Drive
Orlando, Florida 32801
Telephone 407-792-1285
Facsimile 407-649-1657
Email: fscheller@flusalaw.com

11