**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

                              Case No. 6:25-cr- 00290

v.

NEDA JOUDEH,

    Defendant.

---

**DEFENDANT'S MOTION FOR DISCOVERY IN SUPPORT OF HER SELECTIVE-PROSECUTION CLAIM AND INCORPORATED MEMORANDUM OF LAW**

Defendant Neda Joudeh, by and through undersigned counsel, respectfully moves this Court, pursuant to the equal-protection component of the Due Process Clause of the Fifth Amendment and the discovery standard articulated in *United States v. Armstrong*, 517 U.S. 456 (1996), for an order directing the Government to produce discovery relevant to Ms. Joudeh's claim that she has been selectively prosecuted on the basis of her religion and national origin. This motion seeks discovery only. It does not yet ask the Court to resolve the merits of the selective-prosecution claim, and it is independent of, and additional to, the grounds for dismissal raised in Ms. Joudeh's separately filed motion to dismiss the Indictment.

Ms. Joudeh, a Muslim-American woman of Palestinian heritage whose religious and ethnic identity was visible at the very first investigative step, was singled out for federal prosecution under 18 U.S.C. § 875(c) for a single, ambiguous social-media comment. Meanwhile, numerous other speakers who commented on

1

the very same public controversy in terms that were as explicit, or more explicit and more violent, including an overt, graphic call for the mass killing of Jews posted directly beneath a post about the same judge, were neither investigated nor charged as far as counsel has been able to ascertain. As set out below, that record supplies the "some evidence" of discriminatory effect and discriminatory intent that *Armstrong* requires to unlock discovery, and the materials that would fully develop the claim lie within the Government's exclusive control.

## I.  FACTUAL BACKGROUND

On June 21, 2025, the *New York Times* published an article about a law-school seminar paper titled "National Constitutionalism," written by student Preston Damsky. Damsky had been a student in a class taught by United States District Judge John L. Badalamenti at the University of Florida Levin College of Law in the fall of 2024. The student paper argued that the phrase "We the People" in the Constitution referred exclusively to white Americans, proposed disenfranchising nonwhite citizens, and advocated "shoot-to-kill orders" for non-white migrants at the border. Judge Badalamenti awarded Damsky the highest grade in the class and the book prize for best student. The paper and the award drew widespread public attention and criticism, and, according to the Government's search-warrant affidavit, Judge Badalamenti became the target of negative comments online and received hateful telephone calls. *See Gov't Search Warrant Aff. ¶¶ 6–9.*

That same day, Qasim Rashid, a prominent Muslim-American human-rights lawyer and commentator, posted about the article on his public Instagram account. His post referenced three named men: President Donald Trump, Judge Badalamenti, and Preston Damsky. Instagram users began commenting on the post.



*Qasim Rashid Instagram post regarding the Damsky–Badalamenti controversy.*

In the comments to that post, Ms. Joudeh, using the account "falasteen8090", wrote: "I wish someone would in alive him." The Government's affidavit notes that Ms. Joudeh's profile picture displayed the phrase "STOP THE GENOCIDE." Her comment named no individual and was a wishful conditional statement about an unspecified third party, but clearly not about herself.

Although Ms. Joudeh's comment identified no one, Judge Badalamenti personally contacted the USMS on June 22, 2025 and reported the post. The USMS assigned a Protective Intelligence Investigator whose "primary duty is investigating and

mitigating all threats against federal judges in the Middle District of Florida." The affidavit states that Judge Badalamenti "perceived" the comment as a serious threat, and that he and his family "are Jewish and concerned that the comment from Falasteen8090 was also partially motivated by antisemitism." *Gov't Search Warrant Aff. ¶¶ 2, 6, 11, 15–16.*[1]

On October 29, 2025, the Government charged Ms. Joudeh with transmitting an interstate threat to injure in violation of 18 U.S.C. § 875(c). The Indictment does not name Judge Badalamenti as the victim; it charges only a threat to "another person." Doc. 1. Defense counsel has been unable to identify any federal prosecution arising from the hateful telephone calls the judge received, or from other comments made in response to the controversy made by non-Muslim and non-Arab individuals.

## II.  THE LEGAL STANDARD FOR SELECTIVE-PROSECUTION DISCOVERY

The equal-protection component of the Fifth Amendment's Due Process Clause prohibits the Government from making charging decisions "based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456 (1962); *Armstrong*, 517 U.S. at 464. A defendant seeking discovery on a selective-prosecution claim need not prove the claim itself.

---

[1] It is not public knowledge that Judge Badalamenti or his family are Jewish. In fact, public searches for Judge Badalamenti indicate he is an active Catholic. This raises several questions and concerns about the search warrant affidavit, grand jury proceedings, and the USMS and Judge Badalamenti's selection of Ms. Joudeh for prosecution.

She need only make a threshold showing of "some evidence tending to show the existence of the essential elements" of the defense, (1) discriminatory effect and (2) discriminatory intent. *Armstrong*, 517 U.S. at 468–69. "For instance, respondents could have investigated whether similarly situated persons of other races were prosecuted by the state of California and were known to federal law enforcement officers, but were not prosecuted in federal court." Here, Ms. Joudeh's comment was made publicly on Instagram as were all of the examples included below. Law enforcement had as much access and notice of these other social media users public posts as they did of Ms. Joudeh's.

To show discriminatory effect, a defendant must ordinarily make a credible showing that similarly situated persons of a different class were not prosecuted. *Id.* at 470. The Eleventh Circuit describes similarly situated comparators as persons who committed "the same basic crime, in substantially the same manner," against whom the evidence was "as strong or stronger." *United States v. Brantley*, 803 F.3d 1265, 1272 (11th Cir. 2015); *United States v. Smith*, 231 F.3d 800, 809 (11th Cir. 2000).

Discriminatory intent requires evidence that the prosecution was undertaken "at least in part because of," and not merely "in spite of," its adverse effects upon an identifiable group. *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)); *United States v. Cannon*, 987 F.3d 924, 937 (11th Cir. 2021). Critically, the standard for obtaining *discovery*, "some evidence", is lower than the clear-and-convincing

standard required to prevail on the merits or to obtain dismissal. *Smith*, 231 F.3d at 808. The question here is not whether Ms. Joudeh has conclusively established selective prosecution, but only whether she has made the modest threshold showing necessary to obtain discovery. She has.

## III.  MS. JOUDEH MAKES A THRESHOLD SHOWING OF DISCRIMINATORY EFFECT.

Ms. Joudeh's religious and ethnic identity was apparent at the first investigative step. Her Instagram profile displayed the phrase "STOP THE GENOCIDE", a statement of pro-Palestinian political identity visible to anyone who accessed her account, including the USMS investigators who reviewed it. Her username, "falasteen8090," is an Arabic transliteration of "Palestine." She is a Muslim woman of Palestinian heritage, and her comment was posted in response to a post by a prominent Muslim commentator. *Gov't Search Warrant Aff. ¶ 11.*

By contrast, numerous other speakers who made public statements about the same controversy, many far more explicit in their violent content, and several directed at the same figures at the center of this case—were neither investigated nor charged. The following comparators, drawn from the public record, illustrate the disparity.

### A.  @Will422952—an explicit, graphic call for the mass killing of Jews, posted beneath a post about Judge Badalamenti, drew no charge.

In the comments to a post by @AFPost on X concerning Judge Badalamenti, user @Will422952 posted an overt, method-specific call for the mass killing of Jews: "Fuck Jews All 35 million 1 by 1 We outnumber them 100 to 1 2 hands squeeze 2 lungs collapse."

Unlike Ms. Joudeh's conditional and unaddressed remark, this statement uses first-person-plural agency ("we"), identifies a specific victim class ("Jews / All 35 million"), states a numerical objective ("1 by 1"), and describes a physical method of killing. It was posted directly beneath a post about the very judge at the center of this case.



*@AFPost post on X regarding Judge Badalamenti. And comment by @will422952.*



*@Will422952 reply to the @AFPost post.*



*@Will422952 profile.*

Defense counsel has been unable to identify any federal investigation or prosecution of @Will422952 under § 875(c) or any other statute. On any measure, explicitness, specificity, identifiability of the target class, and description of method, this statement is "as strong or stronger" evidence of a true threat than the comment charged here, yet it drew no response. *See Brantley*, 803 F.3d at 1272.

**B.  @_andrei9904: "The world will be a better place without him. Anyone in Florida with a registered firearm should know this."**

In response to a post by a woman's account, @annaforflorida sharing the New York Times article about the White Nationalist Law School Paper, user @_andrei9904 wrote: "The world will be a better place without him. Anyone in Florida with a registered firearm should know this." The statement is a clear suggestion and endorsement of gun violence aimed at "him". It is as unspecific and conditional as Ms. Joudeh's post and also only identifies a "him". Defense counsel has not been able to identify any prosecution of this user.





## C. @HerQueen—"the only good nazi is a dead nazi."

In response to a post by journalist Judd Legum about the Damsky controversy, user @HerQueen wrote: "the only good nazi is a dead nazi." The statement is an unqualified endorsement of killing an identifiable category of person. The speaker's public profile presents as a Black woman whose account is oriented around LGBTQ+ and Black Lives Matter themes.



*Judd Legum post regarding the Damsky controversy.*

10



*@HerQueen repost of the Judd Legum post.*

*@HerQueen profile.*

Defense counsel has been unable to identify any federal investigation or prosecution of @HerQueen.

### C.  Mary Miller—"I hope he gets eaten by an alligator."

In a comment on the *New York Times* article as shared on Facebook, user Mary Miller wrote of Damsky: "What a gross loser and a freak. I hope he gets eaten by an alligator." Very similar to Ms. Joudeh's conditional wish remark, this is a wish that violent harm befall a person connected to the controversy. Also similarly here, "he" could refer to any of the four individuals named in the article or who posted the article. The speaker's public profile presents as a white woman.



*New York Times article as shared on Facebook.*



*Mary Miller profile.*

Mary Miller
What a gross loser and freak. I hope he gets eaten by an alligator.

*Mary Miller comment.*

Defense counsel has been unable to identify any federal investigation or prosecution of this speaker.

### D.  @vvvadderrr—"Go beat his ass."

In the same Instagram comment thread in which Ms. Joudeh posted, beneath Qasim Rashid's post, user @vvvadderrr wrote "Go beat his ass," an exhortation to commit a physical assault. Unlike Ms. Joudeh's conditional wish, this comment is phrased as a direct imperative to act. The speaker's public profile presents as a white male university student.



*@vvvadderrr profile.*

*@vvvadderrr comment on the Qasim Rashid post.*

This comparator is particularly probative because it appeared in the same comment thread, beneath the same originating post, as Ms. Joudeh's remark, and yet drew no investigation as far as counsel is aware. Defense counsel has been unable to identify any federal investigation or prosecution of @vvvadderrr.

### E.  Additional uncharged comparators.

The disparity is not limited to the comments above. At least three additional comparators appear in the public record:

*First,* in the comments to a post by @AFPost regarding the Damsky controversy, user @WhalinRift posted an image depicting Florida State Representative Randy Fine—a Jewish political figure who had publicly pressured the University of Florida to expel Damsky—as a missile being launched, smoking and headed to

crash into a city, captioned "YEET!" Defense counsel has been unable to identify any federal investigation or prosecution of @WhalinRift.

*Second*, in the comments to a post by Judd Legum about the controversy, user @sycamoressource posted: "Yeah we need to bring back what we used to do to Nazis." Directed at the context of a self-identified Nazi's award-winning paper, the statement carries a clear reference to historical violence against an identifiable category of person. Defense counsel has been unable to identify any federal investigation or prosecution of @sycamoressource.

*Third*, Preston Damsky himself—the student who authored the paper and who publicly urged that non-whites be "abolished by any means necessary", has not been prosecuted under § 875(c). Damsky was Judge Badalamenti's own student, and counsel cannot find any record  of the judge seeking his prosecution even though his statements targeted Jews, notwithstanding the judge's stated concern about antisemitism.

Taken together, this pattern of uncharged comparable, and, in several instances, far more explicit, speech, uniformly by non-Muslim and non-Palestinian speakers, supplies the threshold showing of discriminatory effect that *Armstrong* requires. *See* 517 U.S. at 468–70.

## IV.  MS. JOUDEH MAKES A THRESHOLD SHOWING OF DISCRIMINATORY INTENT.

The investigation originated with a judicial officer who, by the Government's own account, connected Ms. Joudeh's comment to her perceived religious and

15

ethnic identity. The affidavit states that Judge Badalamenti was "concerned that the comment from Falasteen8090 was also partially motivated by antisemitism." *Gov't Search Warrant Aff. ¶ 16.* That stated concern reflects a perception of Ms. Joudeh's identity and presumed motivation, not merely the content of her words. Significantly, the affidavit identifies nothing about Ms. Joudeh, no statement, no symbol, no prior conduct, that would support a concern of antisemitism, other than the fact that she is visibly Palestinian and Muslim, which actually raises the very real concern that she was targeted for her Palestinian identity.

The structural circumstances reinforce the inference. This prosecution began when a federal judicial officer perceived himself to be the subject of a comment arising from a controversy about his own conduct, and personally reported it to the very agency charged with his protection, which responded immediately, visiting Ms. Joudeh's home within approximately one week. The charged comment was a single conditional sentence in a public political thread, from a person with no criminal history and no prior connection to the judge, no knowledge of the judge. The speed and vigor of that response stand in pointed contrast to the absence of any identified prosecution of the anonymous callers who, per the same affidavit, made hateful telephone calls to the judge, a more direct, voice-transmitted form of communication, and who were not identified as Muslim or Palestinian. *See id. ¶ 8.*

The combination of Ms. Joudeh's visible identity, the judge-initiated referral, and the affidavit's explicit invocation of antisemitism, tied to nothing but

16

her Palestinian identity, satisfies the threshold showing of intent. Indeed, the Supreme Court in *Armstrong* expressly "reserv[ed] the question" whether a direct admission of discriminatory purpose might obviate the need for a full comparative showing. 517 U.S. at 469 n.3. The Government's own affidavit is as close to a direct statement of identity-based motivation as a selective-prosecution record is likely to contain.

## V.  DISCOVERY IS WARRANTED, AND THE REQUESTED MATERIALS ARE WITHIN THE GOVERNMENT'S EXCLUSIVE POSSESSION.

Having made the threshold showing of both discriminatory effect and discriminatory intent, Ms. Joudeh is entitled to discovery to develop the claim fully. The evidence needed to do so, internal communications, referral and charging records, and comparative enforcement data—is uniquely within the Government's control. Ms. Joudeh respectfully requests that the Court order the Government to produce the following:

> (1) All communications between Judge Badalamenti and any member of the USMS or the United States Attorney's Office for the Middle District of Florida concerning this matter, from June 21, 2025 forward, including the initial June 22, 2025 contact;
>
> (2) All records of any investigation, subpoena, referral, or charging decision made in connection with the threatening telephone calls received by Judge Badalamenti, as referenced in the search-warrant affidavit at paragraph 8;
>
> (3) Any records within the USMS, the Middle District of Florida, or the United States Attorney's Office for the Middle District of Florida reflecting the number of § 875(c) investigations or charges brought in connection with social-media comments made in this political context within the past five years, and the religion, national origin, and ethnicity of the persons investigated and charged;

(4) Any communications between the case agents or prosecutors (AUSA Brandon Cruz, AUSA supervisors, or current AUSA or other prosecutors involved) and Judge Badalamenti after June 22, 2025, including communications relating to the charging decision, the Indictment, the pretrial-diversion request, or the denial of pretrial diversion; and

(5) Records of any investigation or referral by the United States Attorney's Office for the Middle District of Florida or the USMS in connection with any statements made publicly on social media in response to the Damsky–Badalamenti controversy, other than Ms. Joudeh's comment, identifying the religion and national origin or race of any other targets.

This discovery is necessary because the material required to develop the selective-prosecution claim is within the Government's exclusive possession. The threshold showing Ms. Joudeh has made, the intersection of her publicly visible Muslim and Palestinian identity, the judge-initiated investigation, the affidavit's explicit invocation of antisemitism as a concern, the uncharged anonymous threatening telephone calls, and the array of uncharged (and more explicit) comparator posts, satisfies *Armstrong*'s requirement of "some evidence tending to show" discriminatory effect and intent. 517 U.S. at 468–70; *Jordan*, 635 F.3d at 1188.

## VI. CONCLUSION

For the foregoing reasons, Ms. Joudeh respectfully requests that the Court order the Government to produce the discovery set forth above so that she may fully develop her claim of selective prosecution.

## CERTIFICATE OF CONFERENCE

Pursuant to the applicable Local Rule, undersigned counsel reached out during business hours to seek the government's position but has not received a response at the time of filing. Counsel will notify the Court once in receipt of the government's position on this motion for discovery.

Respectfully submitted this 6th day of July, 2026.

/s/ Sufia M. Khalid

Sufia M. Khalid
Deputy Director, Nat'l Security
Criminal Defense Center
Muslim Legal Fund of America
100 N. Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507
Sufia.khalid@mlfa.org
Counsel for Defendant Neda Joudeh

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of July, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Sufia M. Khalid
Sufia M. Khalid