UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:25-cr-290-CEM-DCI

NEDA JOUDEH

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

The United States respectfully opposes Defendant's Motion to Dismiss the

Indictment (Doc. No. 32) and, in support, states the following:

**PRELIMINARY STATEMENT**

Defendant has moved to dismiss the indictment in this case, asserting the

statement: "I wish someone would in alive [sic] him" (hereinafter, the "Charged

Statement") cannot, as a matter of law, constitute a true threat of violence. The

defendant's motion should be denied. The question of whether the defendant's

alleged statement constitutes a true threat is one that must be answered at trial.

**RELEVANT FACTUAL[1]  AND PROCEDURAL BACKGROUND**

On October 29, 2025, the Grand Jury returned the Indictment (Doc. No. 1),

charging Defendant with a single count of Transmission of Interstate Threat to

Injure, in violation of 18 U.S.C. § 875(c). The Grand Jury charged, in pertinent part:

---

[1]  Only the facts asserted in the Indictment are relevant because a motion to dismiss is determined from the face of the indictment. *See United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).

On or about June 21, 2025, in the Middle District of Florida, and elsewhere, the defendant,

NEDA JOUDEH
a/k/a "falasteen8090"

did knowingly transmit in interstate and foreign commerce, a communication containing a threat to injure or kill another person, that is, an online comment that included the statement, "I wish someone would in alive [sic] him," with the intent to communicate a true threat of violence and with recklessness as to whether the communication would be viewed as a true threat of violence.

In violation of 18 U.S.C. § 875(c).

*See* (Doc. No. 1).

On July 6, 2026, Defendant filed her Motion to Dismiss the Indictment (Doc. No. 32). In her Motion to Dismiss, Defendant argued that the Charged Statement, on its face and viewed in its actual political and grammatical context, is not a true threat as a matter of constitutional law. (*Id.*). The United States now responds in opposition in advance of a hearing on the Motion on July 20, 2026.

## MEMORANDUM OF LAW

### I.      A motion to dismiss an indictment is not a substitute for trial.

An indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged". *See* Fed. R. Crim. P. 7(c)(1). An indictment may be dismissed where there is an infirmity of law in the prosecution. *See United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (citing Fed. R. Crim. P. 12(b)). It is well established that "[t]he sufficiency of a criminal indictment

2

is determined from its face." *See United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (quoting *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004)).

"For an indictment to be valid, it must contain the elements of the offense to be charged, and sufficiently apprise the defendant of what [she] must be prepared to meet." *Sharpe*, at 1263 (quoting *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003)). An indictment is sufficient when it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. *See United States v. Wayerski*, 624 F.3d 1342, 1349 (11th Cir. 2010) (quoting *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002)).

An indictment that does not apprise the defendant with reasonable certainty of the nature of the accusation against her is defective. *Sharpe*, at 1263 (citing *Bobo*, at 1083). Merely tracking the language of the statute may not be enough; an indictment must also be accompanied with a statement of the facts and circumstances sufficient to inform the accused of the specific offense with which she is charged. *Id.* But an indictment need not be elaborate, detailed or complex. *See, e.g., United States v. Demeo*, no. 2:26-cr-24-SPC-DNF, 2026 WL 1077630, *2 (M.D. Fla. April 21, 2026).

There is no summary judgment procedure in criminal cases, and the rules do not provide for a pretrial determination of sufficiency of the evidence. *See United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). The court is constitutionally

3

barred from ruling on a hypothetical question. *Id.* The sufficiency of a criminal indictment is determined from its face. *Id.*

Joudeh, though, asks this Court to consider matters beyond the face of the indictment in deciding this motion to dismiss. This Court should decline that invitation. As this Court has correctly stated, the key question decided at a trial will be whether a reasonable jury can find the defendant guilty. *See, e.g.,* July 9, 2026 Hrg. Tr. (Doc. No. 40), pg. 5, lines 3 – 6. In ruling on a motion to dismiss for failure to state an offense, though, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes. *Sharpe*, at 1263. A Court may not dismiss an indictment based on facts that may be developed at trial. *Id.* (citing *Torkington*, at 1354). For purposes of deciding Defendant's Motion to Dismiss, this means that the political context and intended meaning of the comment should not be viewed because they are not contained within the four corners of the Indictment and instead must be developed at trial. *Id.*

Other Courts in this District that have considered similar challenges have rejected them. For example, Joseph Demeo ("Demeo") was charged by indictment with nineteen counts of violating 18 U.S.C. § 875(c), corresponding to Demeo's YouTube comments in which he threatened to kill, "slaughter," and "eradicate" Muslims, immigrants, "American blacks," and "people from India." *See, e.g., United States v. Demeo*, no. 2:26-cr-24-SPC-DNF, 2026 WL 1077630, *1 (M.D. Fla. April 21, 2026). Demeo moved to dismiss the indictment, arguing it failed to state an offense, lacked specificity, and was unconstitutionally vague. *Id.*, at *2. The district court

4

denied Demeo's motion to dismiss, finding that the indictment need not allege context, so long as a reasonable person could interpret the alleged comments as threatening. *Id.*, at *3. The district court also relied on cases which held the question of whether a communication is a threat is a question of fact to be left to the jury. *Id.* (citing *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017); *United States v. Biddle*, No. 6:25-cr-162-RBD-DCI, 2025 WL 2936417, at *2 (M.D. Fla. Oct. 9, 2025); *United States v. Abbott*, No. 24-cr-20098, 2025 WL 1744360, at *2 (S.D. Fla. June 24, 2025); and *United States v. Joseph Rocco Giancola*, no. 2:25-cr-238-KCD-NPM (M.D. Fla. Feb. 15, 2026), Order (Doc. No. 36, at 5 – 6). And the district court determined that Demeo's arguments, including that his threats were not imminent, were not communicated directly to the intended victim, and targeted millions of people, were not considerations for a motion to dismiss but were instead for the jury to consider in deciding guilt. *See Demeo*, at *3.

Similarly, in *Giancolo*, the district judge noted that in deciding a motion to dismiss, the district court does not look at the evidence the prosecution might eventually present and does not assess whether the prosecution can actually prove what it claims. *See, e.g., United States v. Joseph Rocco Giancola*, no. 2:25-cr-238-KCD-NPM (M.D. Fla. Feb. 15, 2026), Order (Doc. No. 36, at 2). Like Defendant, Giancola was charged with violating 18 U.S.C. § 875(c) by posting a message to social media and moved to dismiss the indictment. (*Id.*, at 1). Giancola posted: "I would shoot them dead. Gestapo Lives Don't Matter." (*Id.*). In denying Giancola's

5

motion to dismiss, the district court wrote, "At issue is not whether Giancola is guilty, but whether the indictment alleges a crime." (*Id.*, at 7).

Whether a communication is a true threat is a question of fact to be left to the jury. *See, e.g., United States v. Segari*, No. 5:25-cr-456-KKM-AAS, 2026 WL 653757, at *7 (M.D. Fla. March 9, 2026) (citing *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017)). "All federal courts of appeals appear to agree on this point." *Segari*, at *7 (citing *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008); *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999); and *United States v. Kosma*, 951 F.2d 549, 555 (3d Cir. 1991)). While the Eleventh Circuit has not directly addressed whether a true threat can be decided on a motion to dismiss, its dicta and district courts in this Circuit indicate that this question is better suited for trial. *See Biddle*, at *2.

The question at this stage is whether a reasonable person could view the Charged Statement as a true threat, a decision that must be made at a trial.

## II.    The Indictment charges a "true threat" based on the four corners of that document.

In the present action, Defendant is charged with a single count of Transmission of Interstate Threat to Injure, in violation of 18 U.S.C. § 875(c). That statute provides:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned nor more than five years, or both.

> *See* 18 U.S.C. § 875(c).

While the term "true threat" does not appear in the statutory language, it is well settled that First Amendment considerations require "true threats" be made in order to convict defendants pursuant to 18 U.S.C. § 875(c). *See, e.g., Virginia v. Black*, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003); *see also*, *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). "True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 600 U.S. 66, 72, 143 S.Ct. 2106, 216 L.Ed.2d 775 (2023). "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Id.*, at 74 (quoting *Black*, at 538 U.S. at 359). Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat. *Counterman*, at 74 (citing *Elonis v. United States*, 575 U.S. 723, 733, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015)). To that end, the elements of the charged offense are:

(1) the Defendant knowingly sent a message in interstate or foreign commerce containing a true threat to kidnap any person or injure the person of another; and

(2) the Defendant sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

*See* Pattern Crim. Jury Instr. 11th Cir. OI O30.3 (2025).

A "true threat" is a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would place a reasonable person in fear of being kidnapped or injured or of another person being

kidnapped or injured. *Id.* A statement can count as a true threat based solely on its objective content. *See Counterman*, 600 U.S. at 72.

While the statute does not set forth a *mens rea* for this offense, the Supreme Court has required that communications containing a true threat be sent knowingly and with either intentional or reckless awareness that others could regard the statement as threatening violence. *Id.*; *see also, Elonis*, 575 U.S. 723. In *Counterman*, the Court found that among subjective *mens rea* standards, "recklessness" offered "'enough 'breathing space' for protected speech,' without sacrificing too many of the benefits of enforcing laws against true threats." *See Counterman*, 600 U.S. at 82 (quoting *Elonis*, 575 U.S. at 748). "In the threats context, [recklessness] means that a speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Counterman*, at 79 (quoting *Elonis*, at 746 (ALITO, J., concurring in part and dissenting in part)). Thus, 18 U.S.C. § 875(c) contains both an objective and subjective component.

The Charged Statement reads: "I wish someone would in alive him". "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. *See Black*, 538 U.S. at 359. The speaker need not actually intend to carry out the threat. *Id.*, at 359 – 360.

8

**A. "I wish someone would…"**

The phrase "I wish someone would…" renders the Charged Statement conditional because it expresses a desire for reality to be different. A conditional threat can be a true threat. *See, e.g., Abbott*, 2025 WL 3496169, at *5; *see also, e.g.*, *United States v. Baker*, 514 F.Supp.3d 1369 (N.D. Fla. Jan. 25, 2021). "Most threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats. They are threats nonetheless." *Id.*, at 1381 (*Emphasis* in original) (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)).

Similarly, the Third Circuit has recognized there is no rule that conditional statements, statements conveying a vague timeline or condition, or even wishes can never be a true threat. *See United States v. Stock*, 728 F.3d 287, 301 (3d Cir. 2013) ("Stock has offered no reason, and we can think of none, why a wish would not constitute a threat in the right context."); *see also, United States v. C.S.*, 968 F.3d 237, 245 (3d Cir. 2020); *but, cf., United States v. Daulong*, 60 F.Supp. 235 (W.D. La. May 7, 1945) ("The statute does not penalize the imagining, wishing or hoping that the act will be committed by someone else.").

In *C.S.*, the juvenile defendant was adjudicated delinquent for violating 18 U.S.C. § 875(c) as a result of threats he made in an Internet chatroom dedicated to discussing terroristic attacks. *See C.S.*, at 240. The juvenile made the statement "…if Christians trigger me then I go at the church" after stating he had previously brought

9

a gun to school but was waiting for a better occasion to engage in violence. *Id.*, at 245. The Third Circuit held that the juvenile defendant threatening to attack the church if Christians triggered him was conditional, but the conditional nature of his statements and absence of definite plans did not foreclose a finding by a rational factfinder that the statements were objectively threats. *Id.*

For the foregoing reasons, the phrase "I wish someone would…" does not, as a matter of law, disqualify a statement from being a true threat.

**B. "…in alive…"**

The term "in alive", as written in the Charged Statement, renders the sentence nonsensical. The word "in", when used as a preposition, is a function word that indicates (1) inclusion, location, or position within limits; (2) means, medium, or instrumentality; (3) limitation, qualification, or circumstance; (4) purpose; or (5) the larger member of a ratio. *See* Merriam-Webster Dictionary, "In", https://www.merriam-webster.com/dictionary/in (Last accessed July 16, 2026). A preposition is a word that shows a relationship between a noun or pronoun and other words in a sentence. As used in the Charged Statement, "in" does not seem to properly function as a preposition.

However, "in" can also function as an adverb. When used as an adverb, the word "in" has other meanings which do not pair with the following word, "alive", which is an adjective. The usage of "in" does not seem to fit in the Charged Statement. The word "in" can be used as a noun, and, when it is, "in" means: "one

who is in office or power or on the inside" or "influence, pull". *Id.* The use of "in" as a noun in the Charged Statement similarly does not make sense.

The word "alive" is an adjective, meaning "having life: not dead or inanimate", "still in existence, force, or operation; or still active in competition with a chance of victory", "knowing or realizing the existence of something", "marker by alertness, energy, or briskness", "marked by much life, animation, or activity" and can be used as an intensive following a noun. *See* Merriam-Webster Dictionary, "Alive", https://www.merriam-webster.com/dictionary/alive (Last accessed July 16, 2026).

In context, it does not make sense to pair "in" and "alive". It would therefore seem objectively reasonable to conclude there was typographical error and the term "in alive" should be "unalive" because otherwise the sentence is incomprehensible.

According to Merriam-Webster, the word "unalive" is a slang verb that is a euphemism for "kill" or "die." *See* Merriam-Webster Online Dictionary, "Unalive", https://www.merriam-webster.com/slang/unalive (Last accessed July 14, 2026). Use of "unalive" to mean "kill" or "die" arose on video-focused social media platforms by content creators and commenters to avoid having their videos or comments flagged or removed for violent or inappropriate content. *Id.* Thus, the Charged Statement is using a word to mean "kill" in a manner that attempts to avoid triggering notice and consequences.

Ultimately, the meaning of this phrase in the Charged Statement will be decided by the jury. The United States intends to argue that the phrase is clearly a

typo for "unalive." The defendant presumably means to argue that the statement is unintelligible or something similar based on this phrase. This determination should be left to the jury.

### C. "…him."

The word "him" should constitute the "person of another" as required to state a true threat. It is a pronoun, usually referring to someone other than the speaker. In the Charged Statement, "him" is used at the end of a sentence that begins with "I". Defendant's Motion argues that "him" could refer to any of three individuals, but, at this stage of these proceedings, that does not matter. For determining whether the Charged States constitutes a true threat, the correct question is whether it is directed at the person of another. The use of "him" suggests that it is so directed.

### CONCLUSION

For the foregoing reasons, the Charged Statement can be objectively interpreted as "I wish someone would kill him." Such a conditional statement can be a true threat, depending on the context surrounding it. The Court need not decide now whether the charged statement was actually a true threat because it could be, and that is enough at this stage. *See Biddle*, 2025 WL 2936417, at *5.

**[Remainder of page intentionally left blank.]**

WHEREFORE, the United States requests that this Court deny Defendant's

motion to dismiss indictment.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney


By:    /s/ Patrick M. Flanigan
       Patrick M. Flanigan
       Assistant United States Attorney
       Florida Bar No. 47703
       400 W. Washington Street, Suite 3100
       Orlando, Florida 32801
       Telephone:   (407) 648-7500
       Facsimile:    (407) 648-7643
       E-mail: patrick.flanigan@usdoj.gov

**U.S.A. v. JOUDEH**                        **Case No. 6:25-cr-290-CEM-DCI**

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a

notice of electronic filing to the following:

Fritz Scheller, Counsel for Defendant; and
Sufia M. Khalid, Counsel for Defendant.

/s/ Patrick M. Flanigan
Patrick M. Flanigan
Assistant United States Attorney
Florida Bar No. 47703
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail: patrick.flanigan@usdoj.gov

14